UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY J. V.,[1]<br><br>           Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Operations of Social Security,<br><br>           Defendant. | Case No. ED CV 18-00808-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.   INTRODUCTION

Plaintiff Stanley J. V. ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability and disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.   PROCEEDINGS BELOW

On May 18, 2011, Plaintiff filed a Title II application for a period of disability and DIB alleging disability beginning August 19, 2010. (Administrative Record

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

("AR") 67.) After Plaintiff's application was denied and an administrative hearing was held, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[2] since August 19, 2010. (AR 24.) Plaintiff appealed to the District Court, and on October 15, 2015, this Court remanded the action for further proceedings. (*See* AR 568-76.)

At additional hearings on December 12, 2016 and January 9, 2017, Plaintiff appeared and testified, along with an impartial medical expert and impartial vocational experts. (*See* AR 468-535.) On March 3, 2017, the new ALJ found that Plaintiff had not been under a disability from August 19, 2010 through December 31, 2015, the date last insured. (AR 459-60.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 432.) Plaintiff filed this action on April 19, 2018. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity from August 19, 2010, the alleged onset date ("AOD"), through December 31, 2015, his date last insured ("DLI"). (AR 449.) At **step two**, the ALJ found that Plaintiff had the following severe impairments: vitreous floaters and photopsias in both eyes; hypertension; and migraine headaches. (*Id.*) At **step three**, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 451.)

///

///

Before proceeding to step four, the ALJ found that Plaintiff had the residual

---

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

functional capacity ("RFC") to:

> [P]erform medium work . . . except the claimant could lift and/or carry 50 pounds occasionally and 25 pounds frequently; he could sit for 6 hours in an 8-hour day with normal breaks; he could stand and/or walk for 6 hours in an 8-hour workday with normal breaks; he could occasionally climb ladders, ropes, or scaffolds; he could frequently climb ramps and stairs; he could not perform work requiring good visual acuity; he was limited to work involving simple, repetitive tasks; he could do no work outdoors; and he had to avoid even moderate exposure to hazards, including unprotected heights and dangerous moving machinery.

(AR 452.) At **step four**, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 458.) At **step five**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (AR 458.) Accordingly, the ALJ determined that Plaintiff had not been under a disability from the AOD through the DLI. (AR 459-60.)

## III. <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a

specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

IV. **DISCUSSION**

Plaintiff raises the following issues for review: (1) whether the ALJ properly considered the opinion of an examining physician; and (2) whether the ALJ properly considered Plaintiff's testimony. (*See* Joint Submission ("JS") 5.) For the reasons below, the Court affirms.

A. **The ALJ Properly Rejected An Examining Physician's Opinion In Favor Of Non-Examining Physicians' Opinions**

Plaintiff argues that the ALJ improperly rejected the opinion of Bryan H. To, M.D., who performed a consultative internal medicine examination of Plaintiff. (*See* JS 5-10.) The Commissioner argues that the ALJ properly assigned this opinion little weight. (*See* JS 11-15.)

1. **Applicable Legal Standards**

Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).

4

Most often, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating or examining physician. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31. When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted).

### 2. Opinion of Bryan H. To, M.D.

Dr. To performed an internal medicine examination of Plaintiff in September 2011. (*See* AR 336-40.) Plaintiff reported a history of hypertension, a history of hyperlipidemia, a history of depression, and "on and off" headaches. (AR 336.)

Plaintiff demonstrated grip strength of 90 to 100 pounds in his right hand and 100 pounds in his left hand. (AR 337.) With glasses, Plaintiff's vision was noted as 20/25 in both eyes, 20/20 in his right eye, and 20/25 in his left eye. (*Id.*) His eyes appeared normal with intact ocular movement. (AR 338.) Plaintiff's visual fields were grossly intact to confrontation, and his pupils were equal and reactive to light and accommodation. (*Id.*) There was no evidence of retinal hemorrhages. (*Id.*) Plaintiff had a normal gait and did not require assistive devices for ambulation. (*Id.*) Other physical findings for Plaintiff's back, abdomen, and extremities were unremarkable. (AR 338-39.) The neurological examination was also unremarkable. (AR 339.)

Based on the examination, Dr. To opined that Plaintiff could stand and walk for six hours in an eight-hour workday and push, pull, lift, and carry 20 pounds occasionally and 10 pounds frequently. (*Id.*) He limited Plaintiff to frequent agility and postural abilities. (AR 340.) Dr. To also opined that Plaintiff had no restrictions on his ability to hear and see. (*Id.*) Finally, Dr. To recommended that Plaintiff be restricted from working with heavy and moving machinery. (*Id.*)

### 3. Discussion

The ALJ gave "little weight" to Dr. To's opinion that limited Plaintiff to light work.[3] (AR 457.) Instead, the ALJ gave "great weight" to the opinions of the non-examining state agency medical consultants, who opined that Plaintiff could perform medium work. (AR 456.) Because Dr. To's opinion is inconsistent with these opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence in order to reject Dr. To's opinion. *See Lester*, 81 F.3d at 830.

Plaintiff first argues that the conflicting opinions of non-examining physicians cannot serve as the basis for rejecting the opinion of an examining physician. (JS 8.) However, the ALJ did not state that he rejected Dr. To's opinion due to its inconsistency with other opinions. (*See* AR 457.)

///

Plaintiff also contends that the ALJ cannot substitute his lay opinion for Dr. To's opinion. (JS 8.) The ALJ found that Dr. To's "overly restrictive" limitation to light work was not supported by Dr. To's examination findings or the other objective

---

[3] Social Security regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b).

6

medical evidence. (AR 457.) The ALJ relied on Dr. To's own examination report that showed normal grip strength, no positive musculoskeletal findings, no need for an assistive device, and no neurological deficits that would support a limitation of "light work." (AR 457 (citing AR 338-39).) The ALJ properly rejected the opinion on this basis. *See Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (an ALJ need not accept an opinion that is unsupported by clinical findings); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." (citations omitted)).

Finally, Plaintiff argues that the ALJ improperly rejected Dr. To's opinion as being inconsistent with Plaintiff's daily activities. (JS 9.) However, the ALJ did not state that he rejected Dr. To's opinion on this basis. (*See* AR 457.)

In addition to finding that Dr. To's opinion was unsupported by objective medical evidence, the ALJ noted that, "importantly," Plaintiff "admitted he believed he was able to perform medium level work and that he had stopped working due to his vision limitations and not due to any physical limitations, indicating a continued ability to perform medium level work in direct contradiction of Dr. To's opinion." (AR 457; *see* AR 40, 479, 490, 505, 523-34.) This is another specific and legitimate reason for rejecting Dr. To's opinion. *See Magallanes v. Bowen*, 881 F.2d 747, 751-54 (9th Cir. 1989) (affirming an ALJ's rejection of a treating physician's opinion due, in part, to the opinion's inconsistency with the claimant's testimony); *McCann v. Astrue*, No. CIV S-10-2837 EFB, 2012 WL 1131518, at *5 (E.D. Cal. Mar. 30, 2012) (finding that an inconsistency between an examining physician's opinion and a claimant's "history and response to questioning" was a specific and legitimate reason for rejecting the opinion); *Schroeder v. Colvin*, No. EDCV 13-1633-JPR, 2015 WL 93395, at *8 (C.D. Cal. Jan. 7, 2015) (finding that an ALJ gave specific and legitimate

reasons for discounting a treating physician's opinion when the claimant's "admitted capabilities and his testimony about his limitations were inconsistent with [the physician's] severe findings").

In sum, the Court finds that the ALJ's reasons for discounting Dr. To's opinion are supported by substantial evidence.

Moreover, after providing legally adequate reasons for rejecting Dr. To's opinion, the ALJ was permitted to alternatively rely on non-examining opinions that are consistent with the evidence of record. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."); *Magallanes*, 881 F.2d at 752 (affirming an ALJ's reliance on a non-treating, non-examining medical advisor's opinion that was consistent with other evidence in the record). Here, the state agency medical consultants reviewed Plaintiff's medical records and found that a limitation to light work was "not supported by objective [d]ata." (AR 76; *see* AR 68-72, 349, 423.) The ALJ found that the state agency medical consultants' opinions were consistent with the objective medical evidence, "which showed no physical conditions or limitations." (AR 456.) Thus, the ALJ did not err in relying on non-examining opinions after properly rejecting Dr. To's opinion. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("[W]hen it is an *examining* physician's opinion that the ALJ has rejected in reliance on the testimony of a nonexamining advisor, reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." (emphasis in original)).

**B.    The ALJ Properly Discounted Plaintiff's Subjective Testimony**

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting his subjective testimony. (*See* JS 22.) The Commissioner contends that the properly discounted Plaintiff's testimony. (*See* JS 23-28.) The Court agrees with the

8

Commissioner.

### 1. Plaintiff's Testimony

#### a. January 24, 2013 Hearing

Plaintiff testified that he had worked as a forklift driver for almost twenty years. (AR 35-36, 38.) He stopped working when he began seeing flashes in the sky when outside and floaters in his vision when indoors. (AR 37, 40.) Plaintiff described seeing "little ants running around" in his vision wherever there is light. (AR 40-41.) According to Plaintiff, his doctor said that despite doing tests, they cannot find a medical reason to explain the flashes that Plaintiff sees. (*See* AR 41; *see also* AR 52.)

When the ALJ observed that Plaintiff was wearing glasses, Plaintiff stated that he got a new prescription about seven months earlier because he broke his other pair. (AR 42.)

Plaintiff stated that he has migraine headaches two or three times a week, for two to three hours each time. (*Id.*; *see* AR 53.) During a migraine, Plaintiff takes medication, lies still, and "just let[s] it pass." (AR 42; *see* AR 53-54.) Plaintiff's pain medications are not very effective for his migraines, and one medication makes him drowsy during the day. (AR 45.) Plaintiff cannot drive when he has a migraine because it affects his vision. (AR 53.) Plaintiff also testified that he has had hypertension for about ten or fifteen years and takes medication. (AR 42.)

Plaintiff asserted that he could lift ten or fifteen pounds, but when he lifts or exerts himself, he sees flashing lights. (*See* AR 46-47; *see also* AR 52.) Plaintiff's right hip "gets tired" and sore when he sits for two or three hours, so he needs to move around. (AR 47.) Plaintiff can also stand for only about two hours. (*Id.*)

Plaintiff explained that he is depressed because of his eyes and his wife's cancer. (AR 48.) He also began noticing some memory problems in the prior four months. (*Id.*)

Plaintiff does light housework, such as putting dishes in the dishwasher and

cleaning the bathroom. (AR 49.) Plaintiff drives "once in a while," but his wife does most of the driving for them. (*Id.*) Plaintiff and his wife both go grocery shopping. (AR 50.)

One doctor suggested a procedure for Plaintiff's floaters. (AR 51.) That doctor referred Plaintiff to a retina specialist, who, according to Plaintiff, said they could not operate because it might make his eyes worse. (*Id.*)

### b. December 12, 2016 Hearing

Plaintiff again testified that he stopped working as a forklift operator due to his vision problems with "flashes and floaters." (AR 479-80.) Plaintiff saw three or four retinal doctors who could not determine why Plaintiff saw the flashes without retinal detachment. (AR 480.) Plaintiff agreed that his floaters just get in the way of seeing some things, stating that they are "just so annoying" and make it hard for him to concentrate on what he sees. (AR 504.)

Plaintiff also described having headaches twice a week for two hours each time. (*Id.*) Plaintiff speculated that his migraines were caused by stress. (AR 487.)

Plaintiff was still able to drive, and he passed the vison test for his license in March 2015. (*See* AR 481, 491, 503.) He drives to the store, to get food, to go shopping, and to do his daily routine. (AR 501.) About twice a month, Plaintiff's floaters deter him from driving. (AR 504.) His last long-distance drive was about three or four years before the hearing. (AR 502.)

Plaintiff wears glasses for distance vision. (AR 497-98.) Plaintiff does not need reading glasses. (AR 498-99.)

Plaintiff underwent laser surgery in his left eye about two years before the hearing. (AR 485-86.) He explained that "they would zap the floaters, but they just came back again." (AR 485.) Doctors had recommended surgery a few years earlier, but Plaintiff thought the possible complications and side effects might be worse than his condition at the time. (AR 494-95.)

Plaintiff, now a widower, took care of his wife during her twenty-year battle

with cancer. (*See* AR 493, 495.) Plaintiff used to do some housework to help her, but he needed to take breaks. (AR 487, 496.) Plaintiff assisted with light vacuuming, washing dishes, cleaning the bathroom, shopping for groceries, and doing laundry. (AR 496.) Plaintiff's wife would drive them to the store, and he would carry the groceries. (AR 497.) His wife did most of the driving for them because she knew about Plaintiff's floaters and she enjoyed driving. (AR 501.) Plaintiff now lives with his son because he cannot afford to live on his own. (AR 488.) Plaintiff takes medication for depression and has seen a counselor after his wife's death. (AR 500.)

Plaintiff did not think there was anything preventing him from lifting fifty pounds, sitting six to eight hours, or walking up to six hours in 2012 or 2013. (AR 504-05.)

            c.        January 9, 2017 Hearing

While reviewing the history of Plaintiff's application and prior hearings, the ALJ summarized that Plaintiff "essentially states that [he] felt like [he] probably [could] do medium-level work physically, but that [his] vison was probably [his] most limiting thing." (AR 523-24.) Plaintiff agreed. (AR 524.) The ALJ then called an ophthalmologist to testify as a medical expert, and Plaintiff provided no other new testimony. (*See* AR 526-32.)

      **2.**      **Applicable Legal Standards**

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and

11

convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 3. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 454.) The ALJ relied on the following reasons: (1) activities of daily living; (2) routine and conservative treatment; and (3) lack of supporting objective medical evidence. (AR 453.) No malingering allegation was made, and therefore the ALJ's reasons must be "clear and convincing."

#### a. Reason No. 1: Activities of Daily Living

As part of the credibility determination, the ALJ may consider inconsistencies between the claimant's testimony and his daily activities. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). But a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan*, 169 F.3d at 600; *accord Vertigan v. Halter*, 260 F.3d 1044,

1050 (9th Cir. 2001).

The ALJ noted Plaintiff's "somewhat normal level of daily activity and interaction," such as caring for personal hygiene, preparing simple meals, grocery shopping, running errands, visiting with family and friends, reading the newspaper, watching television, and driving. (AR 453.) The ALJ found that some of the physical and mental abilities required to perform these activities are the same as those necessary for employment and are inconsistent with Plaintiff's allegations of disability. (*Id.*) Specifically, the ALJ found that Plaintiff's ability to perform these activities without assistance demonstrates that his "vision limitations are not as limiting as alleged." (*Id.*)

The Court finds that this inconsistency is a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility. *See Parker v. Colvin*, No. CV 13-7258 FFM, 2015 WL 1401770, at *6 (C.D. Cal. Mar. 25, 2015) (finding that an inconsistency between a claimant's allegations of "extremely bad" vision and his continued ability to drive was a clear and convincing reason for discounting the claimant's credibility); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming an ALJ's adverse credibility determination, despite "equivocal" testimony about how regularly the claimant engaged in her activities, because the ALJ's interpretation was reasonable).

      b. <u>Reason No. 2: Routine and Conservative Treatment</u>

An ALJ may discount a claimant's credibility based on routine and conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting a plaintiff's complaint "that she experienced pain approaching the highest level imaginable" as "inconsistent with the 'minimal, conservative treatment' that she received").

Regarding Plaintiff's migraines, the ALJ observed that this condition was

"relatively well managed with conservative treatment of pain medications." (AR 453; *see* AR 314 ("Topamax 3x a day. Headaches are all gone."), 352 ("gabapentin helping with migraines"), 769 ("[c]onservative management" for migraines).) "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility" for benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Because Plaintiff's treatment consisted of a conservative treatment plan consisting of medication, the ALJ permissibly discounted Plaintiff's credibility with respect to his migraines.

Regarding Plaintiff's eye impairment, the ALJ noted that it was recommended that Plaintiff undergo pars plana vitrectomy if his symptoms became debilitating, but Plaintiff "admitted that his symptoms did not affect his abilities enough to undergo surgery." (AR 453; *see* AR 257.) The ALJ concluded that "[t]he lack of more aggressive treatment, such as surgical intervention, suggests that the claimant's symptoms and limitations were not as severe as he alleged." (*Id.*) Plaintiff contends that the ALJ is incorrect, as Plaintiff underwent laser eye surgery in an attempt to correct his vision problems. (JS 21; *see* AR 485-86.) But the ALJ observed that Plaintiff did so "despite his doctor advising against this procedure." (AR 456.) Indeed, in September 2013, Plaintiff's treating physician at Inland Valley Retina wrote that he had "asked [Plaintiff] not to see anyone for laser for floaters, but he went. [He] paid cash for 3 YAG laser treatments for the floater in the OS, which did not help. . . . Asked [Plaintiff] never to have this done again." (AR 746.) Additionally, the treating physician noted that Plaintiff was "a nonsurgical case," and he "[w]ould not operate on [posterior vitreous detachment] this mild." (*Id.*) The ALJ therefore permissibly discounted Plaintiff's credibility with respect to his eye impairment.

In sum, the Court finds that this reason is a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility. *See Parra*, 481 F.3d at 751 ("[E]vidence of 'conservative treatment' is sufficient to discount a

claimant's testimony regarding severity of an impairment." (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995))).

      c. <u>Reason No. 3: Lack of Supporting Objective Medical Evidence</u>

  The lack of supporting objective medical evidence cannot form the sole basis for discounting testimony, but it is a factor that the ALJ may consider in making a credibility determination. *Burch*, 400 F.3d at 681; *Rollins*, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)).

  A March 2010 examination revealed intact visual acuity and no abnormal physical findings. (AR 277.) In July 2010, Plaintiff complained of having floaters for several months. (AR 274.) His physician noted that Plaintiff last had an eye exam with an optometrist a year earlier. (*Id.*)

  Plaintiff was evaluated by a retinal specialist in August 2010, and he was diagnosed with posterior vitreous detachment. (AR 234-35.) The physician noted no holes, tears, or other concerns. (AR 235.) Plaintiff was also diagnosed with unqualified visual loss. (*Id.*) The physician opined that Plaintiff's floaters may be due to his posterior vitreous detachment, and his kaleidoscope-type symptoms may be due to an ocular migraine. (*Id.*) Plaintiff requested a follow-up carotid study, which showed no hemodynamically significant stenosis. (AR 255, 273.)

  In October 2010, Plaintiff complained of constant increased floaters, "spider web effect," and flashes, which all began about one month earlier, as well as "grey circular shadow," which began about two months earlier. (AR 243.) An examination showed posterior vitreous detachment with minor opaqueness and no retinal cause for Plaintiff's symptoms. (AR 245.) Plaintiff's brain MRI was unremarkable. (AR 289.)

  Plaintiff underwent a neuro-ophthalmic evaluation in January 2011. (*See* AR 256-58.) His visual acuity with correction was 20/20 in his right eye and 20/25 in his left eye. (AR 256.) Plaintiff's pupils, extraocular movements, and

confrontational visual fields were normal. (*Id.*) The macula and vessels were normal, and no retinal tears or detachments were observed. (AR 257.) Plaintiff's left retinal periphery was notable for a few pars plana cysts. (*Id.*) A posterior vitreous detachment was seen in both eyes with prominent mid-vitreous floaters. (*Id.*) Plaintiff was diagnosed with chronic posterior vitreous detachment with significant floater-type symptoms and photopsias consistent with a migraine equivalent. (*Id.*) It was recommended that Plaintiff undergo a pars plana vitrectomy if he considered his symptoms debilitating, but Plaintiff did not believe that the floaters were that severe. (*See id.*) The physician recommended a trial of antimigraine therapy for the photopsias. (*Id.*) Overall, Plaintiff's eye status was "stable" and no further neurologic work-up was necessary. (*Id.*)

In March 2011, Plaintiff stated that medication completely alleviated his headaches. (AR 314.) In April 2011, Plaintiff reported that his flashes and floaters were "mild." (AR 426.)

At an August 2011 ophthalmological examination, Plaintiff's distance visual acuity was 20/30 in each eye with correction, and his near visual acuity was 20/30 in each eye. (AR 333.) Plaintiff's visual fields showed nonspecific changes. (*Id.*) The ophthalmologist observed posterior vitreous detachments in both eyes, but otherwise normal pathological findings. (*Id.*) Plaintiff was diagnosed with vitreous floaters and photopsias possibly secondary to ophthalmic migraine. (*Id.*) The ophthalmologist also noted that Plaintiff did not require assistance when entering the exam room or sitting in the exam chair. (*Id.*)

///

Plaintiff underwent a consultative internal medicine evaluation in September 2011. (*See* AR 336-40.) Plaintiff reported a history of hypertension with on and off headaches, a history of hyperlipidemia, and a history of depression. (AR 336.) With glasses, Plaintiff's visual acuity was 20/20 in the right eye, 20/25 in the left eye, and 20/25 in both eyes. (AR 337.) Plaintiff's visual fields were grossly intact to

confrontation, ocular movement was intact, and pupils were equal and reactive to light and accommodation. (AR 338.) Plaintiff's ambulation, physical findings of his back and extremities, motor strength, and sensation were normal. (*See* AR 338-39.)

In October 2011, Plaintiff reported that his floaters and daily migraines had become significant, affecting both near and far vision. (AR 429.) However, Plaintiff's vision was 20/25 in both eyes. (AR 430.)

Because Plaintiff's migraines had returned, Plaintiff was prescribed a different medication in January 2012. (*See* AR 355.) In May 2012, Plaintiff reported that the new medication was helping his migraines, and he was sleeping well. (AR 352.)

In January 2013, Plaintiff's vision symptoms were described as infrequent and mild. (AR 748.) In September 2013, Plaintiff's treating physician described Plaintiff's condition as "a nonsurgical case" because he would not operate on posterior vitreous detachment that was "this mild." (AR 746.)

Plaintiff's migraines were treated by "[c]onservative management" in January 2014. (AR 769-70.) In October 2015, Plaintiff's visual acuity was noted as 20/30 in both eyes. (AR 742.)

The ALJ thoroughly considered Plaintiff's medical records (*see* AR 454-56) and found that Plaintiff's allegations of disabling symptoms and limitations were not consistent with the medical evidence. (*See* AR 454.) The ALJ was permitted to rely on the lack of significant medical findings in assessing the credibility of Plaintiff's testimony. *See Garza v. Astrue*, 380 F. App'x 672, 674 (9th Cir. 2010) (finding that an ALJ properly considered a claimant's normal exam findings when noting a lack of objective medical evidence to support the claimant's allegations). Although Plaintiff's treatment records may be interpreted in more than one way, the evidence can rationally support the ALJ's determination. Accordingly, the Court must uphold his interpretation of the evidence. *See Ryan*, 528 F.3d at 1198; *Robbins*, 466 F.3d at 882.

The Court finds that this reason is a clear and convincing reason, supported by

substantial evidence, to discount Plaintiff's credibility.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: February 28, 2019

*Rozella A. Oliver*
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**